IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DALE PETERSEN,                          )
                                        )
                Plaintiff,              )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 08-2154-JWL-DWB
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                Defendant.              )
_____)


REPORT AND RECOMMENDATION


        Plaintiff seeks review of a decision of the Commissioner of
Social Security (hereinafter Commissioner) denying disability
insurance benefits (DIB) and supplemental security income (SSI)
under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A)(hereinafter the Act).  (Doc. 1).  Finding no
error, the court recommends judgment be entered in accordance
with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the
Commissioner's decision.

I.    Background

        Plaintiff's applications for DIB and SSI were denied
initially and upon reconsideration, and plaintiff filed a request
for hearing before an Administrative Law Judge (ALJ).  (R. 18).

A hearing was held at which plaintiff was represented by counsel. Id. At the hearing, testimony was taken from plaintiff and from a vocational expert. Id. On October 12, 2007, ALJ Evelyn M. Gunn issued a very thorough and detailed decision finding plaintiff not disabled within the meaning of the Act, and denying his applications. (R. 18-41).

Specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date, February 7, 2003, and that plaintiff has a "severe" combination of impairments consisting of degenerative joint disease with associated neuropathy, history of surgical repair of the left rotator cuff, obesity, history of asthma and tobacco abuse, polysubstance abuse disorder (alcohol, cocaine, and marijuana), and an affective disorder. (R. 20). She found that the severity of plaintiff's condition does not meet or medically equal the severity of any Listed impairment. (R. 21).

In sixteen and one-half pages of her decision, the ALJ summarized the record evidence, evaluated the medical opinions, evaluated the credibility of plaintiff's allegations of disabling symptoms, and assessed plaintiff's residual functional capacity (RFC). (R. 21-38). She found plaintiff's allegations not credible. (R. 38). She noted that "the medical evidence does not contain any detailed function-by-function assessment of claimant's retained capacity to perform basic physical or mental

work-related activities or even a conclusory statement to the effect that he is disabled." (R. 35). She accorded "significant weight" to the treating source opinion of Dr. Moscovich; the nontreating source opinions of consultative examiners Dr. A. Stern,[1] and Dr. Bean; and the nonexamining source opinions of state agency psychologists Dr. G. Stern,[1] and Dr. Bergman-Harms. Id. "Significant weight" was accorded to the nontreating source opinion of consultative examiner Dr. Fortune and the nonexamining source opinion of the state agency physician who prepared a physical RFC assessment--Dr. Vopat. (R. 36). The ALJ discounted the treating source opinion of Dr. Taylor-Butler.[2] (R. 32).

The ALJ assessed plaintiff with the RFC for light work with limitations: to "avoid jobs requiring overhead work or rapid repetitive motions of the bilateral hands or wrists;" to perform no more than occasional climbing; and to avoid exposure to fumes, odors, dust, noxious gases, or poor ventilation; and with the mental abilities to: "understand, remember, and carry out simple instructions or tasks; use simple judgments, respond

---

[1]Dr. Avner Stern provided a consultative psychological examination (R. 251-52), and Dr. George Stern completed a Psychiatric Review Technique form and a mental RFC form at the initial evaluation. (R. 205-19). The ALJ referred to Dr. G. Stern as "G. Sterns, Ph.D." (R. 35).

[2]The ALJ introduced Dr. Taylor-Butler as the physician who treated plaintiff at the Swope Health Quindaro clinic (R. 30), and thereafter referred to him as Dr. Butler. (R. 32, 34, 37).

appropriately to supervisors, coworkers, and usual work situations; and deal with changes in a typical work setting."

Considering the RFC assessed, the ALJ determined that plaintiff is unable to perform his past relevant work, but that jobs of which plaintiff is capable of performing exist in significant numbers in the economy. (R. 38-39). Therefore, she determined plaintiff is not disabled within the meaning of the Act and regulations, and denied his applications. (R. 41).

Plaintiff disagreed, submitted additional evidence, and sought Appeals Council review of the ALJ's decision. (R. 13, 401-12). The Appeals Council made the evidence submitted a part of the administrative record, concluded the additional evidence did not provide a basis to change the ALJ's decision, and denied plaintiff's request for review. (R. 7-10). Therefore, the ALJ's decision became the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the final decision.

## II.  Legal Standard

42 U.S.C. § 405(g) guides the court's review of a final decision by the Social Security Administration. 42 U.S.C. §§ 405(g), 1383(c)(3). It provides that "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the Commissioner's factual findings are

-4-

supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable

-5-

to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through

-6-

four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**III. The Parties' Arguments**

Plaintiff filed a Social Security Brief "Pursuant to Local
Rules 83.7.1(d) and 7.6, . . . seek[ing] judicial review of [the]
February 26, 2008 decision of [the] Appeals Council denying
review of [the] unfavorable decision of [the] administrative law
judge." (Pl. Br. 1).  Other than the citation to local rules
83.7.1(d) and 7.6, plaintiff's brief contains no citation to
statutory, regulatory, or case law authority to support the
arguments made.  Plaintiff's brief contains a "Statement of
Material Facts" with citation to the administrative record filed
in this case (Pl. Br. 1-9),[3] a "Statement of Question Presented"
(Pl. Br. 9-10), and an "Argument."  (Pl Br. 10-13).

The "Statement of Question Presented" asks whether
substantial evidence supports the ALJ's decision (Pl. Br. 9) and
the "Argument" presents plaintiff's contention that he is

---

[3]Plaintiff's brief does not contain page numbers, so the
court has used the page numbers assigned by the portable data
file (.pdf) software reading plaintiff's brief as filed in the
court's CM/ECF (Case Management/Electronic Case Filing) system.

-7-

disabled, based upon plaintiff's testimony and other evidentiary presentations by plaintiff and upon plaintiff's view of the record evidence as cited in the "Statement of Material Facts." (Pl. Br. 10-13).   In his brief, plaintiff does not point to any specific error allegedly committed by the ALJ in the final decision.   Moreover, he does not present a specific argument based upon logical or legal authority explaining why the record evidence does not or cannot support the ALJ's decision.   By implication, however, plaintiff's brief asserts several errors: (1) in finding plaintiff's allegations not credible (Pl. Br. 3-13); (2) in weighing the medical opinions (Pl. Br. 3-5); (3) in evaluating the RFC assessment; (4) in relying upon jobs requiring "repetitive tasks, including use of upper extremities, which are beyond Plaintiff's physical abilities" (Pl. Br. 11); (5) in relying upon a history of substance abuse which was favorably resolved before the alleged onset of plaintiff's disability (Pl. Br. 5, 12); and (6) in relying upon sporadic medical treatment which "is the result of Plaintiff's poverty and lack of medical insurance."   (Pl. Br. 12).

In a footnote at the beginning of the "Argument" section of his brief, the Commissioner argues that "plaintiff's claims of error should be deemed waived," because plaintiff failed to cite any legal authority in support of his argument.   (Comm'r Br. 3 n.1)(citing Scott v. Hern, 216 F.3d 897, 910 n.7 (10th Cir.

2000); and <u>Jones v. Wildgen</u>, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004)).  He then argues that the ALJ's RFC assessment is supported by substantial evidence and that the step five determination was proper.  Since plaintiff did not point to specific errors in the decision, it is not surprising that the Commissioner's brief is not directly responsive to each of the errors the court found implied in plaintiff's brief.  Despite the Commissioner's assertion that plaintiff's claims of error should be deemed waived, plaintiff did not file a reply brief making any responsive argument.

## IV.  Waiver of Claims of Error

In his complaint, plaintiff sought judicial review of the "final decision of the Commissioner" pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  In his brief, plaintiff did not provide any specific citation to the Act, yet he again sought judicial review.  As discussed above, the Act provides that judicial review of a "final decision" is deferential to the Commissioner's decision and involves a determination whether the Commissioner's factual findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g)(sentence five).

The Commissioner has cited <u>Scott</u>, 216 F.3d at 910 n.7, and <u>Wildgen</u>, 349 F. Supp. 2d at 1361, cases from both the Tenth Circuit and this district for the proposition that all of plaintiff's claims of error should be deemed waived because

plaintiff failed to cite any legal authority in support of his argument that substantial evidence does not support the final decision.  The court disagrees with part of the Commissioner's argument.  First, in the complaint plaintiff did cite to § 405(g) of the Social Security Act governing judicial review of final decisions of the Commissioner.  (Doc. 1).  In his brief plaintiff sought judicial review of the final decision pursuant to the local rules governing such review––83.7.1, and 7.6.  (Pl. Br. 1).  The court is familiar with the legal standard governing judicial review pursuant to the Act, and does not need additional legal authority to know that judicial review pursuant to § 405(g) requires a determination whether substantial evidence supports the decision.  Second, plaintiff provided a pinpoint citation to the record for each "material fact" upon which he relies to support the implication that substantial evidence in the record does not support the Commissioner's final decision.  (Pl. Br. 1-9).  Third, in his statement of the question, plaintiff asked whether substantial evidence supports the final decision.  (Pl. Br. 9).

Thus, plaintiff has argued and provided legal authority for his argument that substantial evidence does not support the Commissioner's final decision.  Therefore, the court finds that plaintiff has not waived his argument that substantial evidence does not support the final decision.  However, plaintiff has not

provided legal authority to support an argument that the
Commissioner applied the incorrect legal standard in reaching any
of the determinations necessary to the final decision at issue.
The court finds, therefore, that plaintiff has waived any
argument that the Commissioner erred in applying the correct
legal standard to any of the determinations at issue here.
Scott, 216 F.3d at 910 n.7(the court is "not required to
manufacture a party's arguments on appeal when it has failed in
its burden to draw our attention to the error below")(citing
Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1244
(10th Cir. 1989)); Wildgen, 349 F. Supp. 2d at 1361.

        Therefore, the court will review the final decision and
determine whether substantial evidence in the record as a whole
supports the findings plaintiff's brief impliedly argues are not
properly supported:  (1) the finding that plaintiff's allegations
are not credible; (2) the weight accorded the medical opinions;
(3) the ALJ's RFC assessment; (4) the finding that representative
jobs do not require "repetitive tasks, including use of upper
extremities, which are beyond Plaintiff's physical abilities"
(Pl. Br. 11); (5) the finding that plaintiff has abused drugs
during the time relevant to the applications at issue; and
(6) the ALJ's reliance upon sporadic medical treatment, despite
Plaintiff's allegation that lack of treatment resulted from
"poverty and lack of medical insurance." (Pl. Br. 12).

-11-

**V.   Whether Substantial Evidence Supports the ALJ's Credibility Determination**

The ALJ found that "claimant's allegations . . . regarding the degrees of his pain, symptoms, and limitations are not credible." (R. 38).  The errors implied in plaintiff's brief are largely based upon and supported by "material facts" alleged in plaintiff's testimony, plaintiff's submissions to the agency, and an "Activities of Daily Living" form signed by plaintiff and completed by his attorney.  (Pl. Br., "Statement of Material Fact" Nos. 1-7, 15-38).  Plaintiff does not specifically argue that the credibility determination is erroneous.  However, if the errors implied in his brief are to be accepted, the ALJ's credibility determination must, necessarily, be erroneous. Therefore, the court first reviews the credibility determination. The Commissioner argues that the credibility determination is supported by substantial evidence.  (Comm'r Br. 4-9).

Throughout her summary of plaintiff's testimony and of the record evidence, the ALJ pointed out inconsistencies in plaintiff's testimony or in his other submissions.  (R. 22-35). After summarizing the evidence, the ALJ presented her credibility analysis which the court quotes here in its entirety:

> The Administrative Law Judge finds the objective
> evidence establishes the presence of a pain-producing
> and other symptom-producing impairment and a nexus to
> claimant's subjective complaints, but does not
> establish that his pain and other symptoms are, in
> fact, disabling, and there are multiple factors cited

above and below that greatly detract from claimant's
allegations in this appeal.

Claimant alleged bilateral carpal tunnel syndrome and
previous surgery to treat that condition, but the
medical evidence repeatedly reveals his admission that
his prior surgeries were only to excise ganglion cysts.
He alleges inability to lift, grasp, hold, push, or
pull objects; however, multiple physical examinations
of record reveal[] he demonstrated full to nearly full
strength in the bilateral extremities, full to nearly
full grip strength in the bilateral hands, preserved
fine manual dexterity for fine manipulation, and intact
neurological functioning in the bilateral hands despite
some occasions of decreased sensory functioning.  He
alleged constant level "9" pain, but the medical
records reflect multiple reports from treating and
examining physicians that he presented as alert and
oriented in all spheres and in no acute distress, as
well as multiple occasions wherein he endorsed a far
less pain level to primary treating physicians.
Moreover, the medical evidence is replete with
references that he was non-compliant or poorly-
compliant with medications prescribed to help treat his
pain and neuropathy symptoms, as well as occasions
wherein he admitted those medications helped improve
his symptoms at least somewhat.  He alleged he sees Dr.
Moscovich, Dr. [Taylor-]Butler, and nurse practitioner
Steen on a monthly basis; however, the medical records
refute that allegation and reflect multiple periods of
several months to over 1-year duration wherein he did
not seek any medical treatment.  He testified he takes
"about 40 different kinds" of medications, but noted
only 8 current medications in Exhibit 16E and his
testimony; however, the medical evidence of record
reveal his most recent prescribed medications include
Oxaprozin, Flexeril, Amitriptyline, and Advair.  He
alleged continued prescribed use of Zoloft and
Trazodone, but the most recent psychiatric treatment
notes of record reveal he was essentially non-compliant
with prescribed psychotropic medications, preferring
instead to abuse his mother's Valium, and do not
reflect any recurrent prescribed use of those
medication, nor did claimant cite those medications to
nurse practitioner Steen when he presented to her in
January 2007 after over a 4-month period of no
treatment encounters whatsoever.  He alleged breathing
difficulties, but physical examinations repeatedly

-13-

revealed only rare or slight wheezing and essentially normal respiratory functioning and normal blood oxygen saturation on room air.  He alleged financial constraints in obtaining medical treatment, but the records reveal he utilized financial resources available to him towards recurrent purchases of cigarettes and alcohol and previously crack cocaine and marijuana.  He alleged no illicit drug use since 2002, but the July 2003 substance abuse records, as well as the 2004 records from Dr. Butler reveal his admissions of continued marijuana use thereafter.  Dr. Bean opined it was not clear that claimant had discontinued substance abuse and Dr. Stern opined claimant could retain a substance-induced disorder consistent with claimant's admitted abuse of his mother's Valium.  Claimant's alleged a need to frequently lie down or nap throughout the day to treat pain, but the treatment notes do not reflect such extreme complaints of recurrent symptoms and rather his admission to the substance abuse counselor of a very wide range of leisure and recreational interests, and Dr. Butler prescribed exercises to help treat his symptoms which contraindicates a medical need to lie down as alleged.  Claimant alleged poor concentration due to depression and medication side effects, but the consultative psychologists mutually opined he demonstrated low average cognitive or intellectual functioning and only some mild or "a little bit" of deficits in this regard, and claimant reported he was compliant with the prescribed medications at the time those examinations and assessments were made.  The mental status findings reported by Dr. Moscovich and substance abuse counselors at the VA Medical Center not only reflect no complaint or finding of any significant cognitive dysfunction, but also that claimant demonstrated good social interactions, not supportive of his allegations of anger outbursts and inability to get along with others.  He alleged recurrent episodes of dizziness and blackouts related to certain movements of the neck or due to medications; however, the treatment notes reflect only 1 occasion of such a complaint and no evidence that medications were changed at that time as alleged.  Further, claimant did not make any complaint of dizziness or blackout during multiple physical examinations wherein he underwent range of motion testing of the cervical spine, nor did any examining physician report such anomalies from such testing.

-14-

> Upon a longitudinal review of the entire evidentiary
> record, the Administrative Law Judge finds claimant
> retains some pain and limitations resultant from his
> combined medically determinable impairments; however,
> claimant's allegations, and those reflected in a third
> party questionnaire, regarding the degrees of his pain,
> symptoms, and limitations, are not credible.  Although
> the undersigned finds claimant retains some pain and
> limitations, the regulations direct that an individual
> need not be totally pain-free or symptom-free to be
> found capable of engaging in substantial gainful
> activity.

(R. 36-38).

The portion of the decision quoted is the ALJ's credibility analysis made after she had summarized the record evidence relevant to credibility.  The court notes that even the ALJ's summary of the evidence contains very little citation to the record.  Nonetheless, the court has reviewed the record and finds that the ALJ's summary of the evidence is a fair and appropriate summary, and that the credibility analysis is supported by substantial evidence in the record as a whole.  Although plaintiff's testimony, some of plaintiff's submissions, some of plaintiff's reports to medical sources, and certain portions of the medical evidence as cited by plaintiff provide limited support for plaintiff's allegations, the ALJ's credibility analysis quoted above accounts for plaintiff's allegations, explains why plaintiff's allegations were found not credible, and points to substantial evidence in the record supporting the ALJ's finding of incredibility.

The mere fact that there is some evidence which might support a finding contrary to the ALJ's will not establish error in the credibility determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(citations, quotations, and brackets omitted).  The court finds no error in the credibility determination.

## VI.  Whether Substantial Evidence Supports the Weight Accorded the Medical Opinions

In his "Statement of Material Facts," plaintiff points to medical opinions expressed by Dr. G. Stern, Dr. Fortune, Dr. Vopat, and Dr. Taylor-Butler, and thereby implies that the ALJ's evaluation of the medical opinions is not supported by substantial evidence in the record.  (Pl. Br. 3-5).  The Commissioner argues that the ALJ properly evaluated the medical opinions, accorded appropriate weight to each, and properly discounted the opinion of Dr. Taylor-Butler.  (Comm'r Br. 9-10).

As discussed at pp. 2-3 above, the ALJ noted that "the medical evidence does not contain any detailed function-by-function assessment of claimant's retained capacity to perform basic physical or mental work-related activities or even a conclusory statement to the effect that he is disabled."  (R. 35).  The ALJ accorded "significant weight" to the treating

source opinion of Dr. Moscovich; the nontreating source opinions of consultative examiners Dr. A. Stern, and Dr. Bean; and the nonexamining source opinions of state agency psychologists Dr. G. Stern, and Dr. Bergman-Harms.  Id.  "Significant weight" was also accorded to the nontreating source opinion of consultative examiner Dr. Fortune and the nonexamining source opinion of the state agency physician who prepared a physical RFC assessment-- Dr. Vopat.  (R. 36).  The ALJ discounted the treating source opinion of Dr. Taylor-Butler.  (R. 32).

As plaintiff points out, Dr. G. Stern found moderate difficulties in maintaining social functioning and in maintaining concentration.  He also noted difficulty with short-term memory creating difficulty "understanding, remembering and carrying out detailed instructions."  (Pl. Br. 3-4)(fact 10)(citing (R. 208, 215, 225))(emphasis added).  The ALJ accorded significant weight to Dr. Stern's and Dr. Bergman-Harms's opinions because they were consistent with and supported by Dr. Moscovich's treating source opinion and Dr. Fortune's nontreating source opinion, and because the psychologists are qualified mental healthcare specialists with specific expertise in evaluating mental impairments in accordance with the Listings and with the Social Security Administration's disability programs. (R. 35-36).  Accordingly, and consistent with Dr. G. Stern's opinion, the ALJ found plaintiff able only to "understand, remember, and carry out

<u>simple</u> instructions or tasks," not <u>detailed</u> instructions.  (R. 22)(emphasis added).  The evidence supports the weight accorded Dr. G. Stern's opinion.

With regard to Dr. Fortune's opinion, plaintiff notes that Dr. Fortune diagnosed carpal tunnel syndrome, asthma, dermatitis, low back pain, and depression, and stated his opinion that plaintiff would have problems with above-shoulder activities because of neck pain.  (Pl. Br. 4)(fact 11).  The ALJ also mentioned these findings by Dr. Fortune.  (R. 33).  Further, the ALJ noted Dr. Fortune's findings that plaintiff's wrist scars were located in an area inconsistent with carpal tunnel surgery. <u>Id.</u>; <u>see also</u>, (R. 236)("I was somewhat confused about the location of his scars.").  The ALJ noted that the consultative examiner's (Dr. Fortune's) assessment was consistent with and well supported by the nonexamining source opinions of Dr. G. Stern and Dr. Bergman-Harms.  (R. 35).  The ALJ noted she could not accord controlling weight to Dr. Fortune's opinion, but accorded it significant weight because Dr. Fortune is board-certified, his opinion was based upon his examination of plaintiff and his review of the medical records, his opinion is consistent with and well-supported by his examination and by the contemporaneous medical records from the VA and from Dr. Taylor-Butler.  (R. 36).  Consistent with her finding, and with Dr. Fortune's opinion that plaintiff would have trouble with above-

-18-

shoulder activities, the ALJ found plaintiff must avoid jobs requiring overhead work.  (R. 21-22).  The evidence supports the weight accorded Dr. Fortune's opinion.

Plaintiff next addresses the physical RFC assessment form completed by Dr. Vopat, and notes Dr. Vopat's opinions that plaintiff should avoid overhead lifting or "repetitive motions[4] with hands and wrists."  (Pl. Br. 4)(fact 12)(citing (R. 241)). As with the opinions of Drs. Stern and Fortune, Dr. Vopat's opinion is consistent with the ALJ's RFC assessment.  Consistent with Dr. Vopat's opinion, the ALJ found plaintiff must avoid overhead work and rapid repetitive motions of the wrists and hands.  (R. 21-22).  Plaintiff points to no error in accepting Dr. Vopat's opinion, and substantial evidence supports that determination.

Finally, plaintiff points to the opinion of his treating physician, Dr. Taylor-Butler that plaintiff has wrist and hand pain, cervical degenerative osteoarthritis, and respiratory ailments, has difficulty using his left hand, and "cannot grip, grasp, or hold anything weighing more than two pounds without experiencing pain and he drops objects periodically if not

_____

[4]Plaintiff's brief mischaracterizes Dr. Vopat's opinion to the extent plaintiff argues he cannot perform <u>any</u> repetitive motion of the hands and wrists, because the doctor stated plaintiff "should avoid <u>rapid</u> repetitive motions with the hands and wrists."  (R. 241)(emphases added).

often."  (Pl. Br. 4-5)(fact 13)(quoting (R. 260)).  The ALJ

acknowledged, but rejected, the limitations opined by Dr. Taylor-

Butler:

> [Dr. Taylor-Butler] also provided claimant a "to whom
> it may concern" letter wherein he reported claimant
> "should be considered a good candidate to proceed for a
> disability evaluation" based on degenerative joint
> disease and respiratory problems; however, there is no
> indication Dr. Butler performed such an examination or
> that he provided a detailed function-by-function
> assessment of claimant's retained ability to perform
> basic work-related activities.  That letter contains
> his statement that claimant has difficulty using only
> his non-dominant left hand and "cannot grip, grasp, or
> hold anything with weighing more than two pounds
> without experiencing pain and he drops objects
> periodically if not often;" however, his treatment
> notes do not reflect any objective or clinical finding
> indicating that he had actually evaluated claimant's
> exertional or manipulative functioning in this regard,
> but rather indicate findings of good retained motor
> strength and no significant abnormalities in the
> extremities, and such statement is a reiteration of
> claimant's subjective complaints of his retained
> capacity rather than an objective medical opinion based
> upon a functional capacity evaluation.  Moreover, the
> Social Security Administration has accorded claimant
> the benefit of multiple consultative examinations
> regarding his allegation of disability as cited more
> fully above and below

(R. 32).

As the Commissioner points out, plaintiff had only been

treated at Swope Health on three occasions before Dr. Taylor-

Butler wrote his letter opinion.  (R. 199-200, 261-65).  The ALJ

noted that plaintiff presented the letter to Dr. Moscovich, one

of plaintiff's treating physicians at the VA, but Dr. Moscovich

-20-

told plaintiff he does not meet any criteria for disability.  (R. 32, 279).

The ALJ explained the weight given to the medical opinions. (R. 35-36).  The ALJ gave significant weight to Dr. Moscovich's opinion because Dr. Moscovich is a board-certified, treating physician, and her opinions are consistent with and well-supported by the opinions of Drs. A. Stern, Bean, G. Stern, and Bergman-Harms.  As discussed above, the ALJ also gave significant weight to the opinions of Drs. Fortune, G. Stern, and Vopat for the reasons stated above.  In the circumstances, and lacking a specific allegation of error in discounting Dr. Taylor-Butler's opinion, the court cannot find that substantial evidence in the record does not support the ALJ's weighing of the medical opinions.

## VII. Whether Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff's "Statement of Facts" includes many statements regarding his capabilities:  doctors' opinions(as discussed above); unable to turn neck, cannot move head laterally; cannot pick up objects, grasp, lift, push or pull, perform ordinary physical activities, or lift arms overhead; daily activities are extremely limited, needs help with basic hygiene and household activities; has great difficulty raising arms and cannot raise arms overhead; constantly fatigued and having to catch his

breath; has dizzy spells four or five times weekly, and experiences blackouts on almost a daily basis.  (Pl. Br. 3-8). The Commissioner argues that substantial evidence supports the ALJ's RFC assessment.  (Comm'r Br. 3-10).

To the extent the limitations suggested in plaintiff's brief are based upon plaintiff's testimony or documents completed by plaintiff, the ALJ found plaintiff's allegations not credible, and the court found substantial evidence supports the ALJ's credibility determination.  Similarly, the court found substantial evidence supports the ALJ's weighing of the medical opinions and the determination to discount Dr. Taylor-Butler's opinions.  Therefore, the ALJ need not include in her RFC assessment any limitations based solely upon plaintiff's allegations and/or the medical opinions of Dr. Taylor-Butler.

The ALJ assessed plaintiff with the RFC:

> to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently.  He must avoid jobs requiring overhead work or rapid repetitive motions of the bilateral hands or wrists, but is otherwise capable of performing basic manipulative work-related activities within the above-cited weight limits.  He is able to sit, stand, and/or walk each at least 6 hours total throughout the course of a normal 8-hour workday with normal breaks.  He is limited to jobs requiring no more than occasional climbing, but is otherwise capable of frequent performance of other basic postural work-related activities.  He retains no significant communicative or sensory work-related limitation regarding his ability to see, hear, speak, taste, or smell.  He must avoid jobs requiring concentrated exposure to fumes, odors, dust, noxious gases, or poor ventilation.  He retains the ability to understand,

> remember, and carry out simple instructions or tasks;
> use simple judgement; respond appropriately to
> supervisors, coworkers, and usual work situations; and
> deal with changes in a typical work setting.

(R. 21-22).

The ALJ accorded significant weight to the physical RFC assessment of Dr. Vopat (R. 36) and the mental RFC assessment of Drs. G. Stern and Bergman-Harms. (R. 35-36). These assessments are substantial evidence in the record which supports the ALJ's RFC assessment, and plaintiff points only to his testimony or to the discounted opinion of Dr. Taylor-Butler which is inconsistent with the RFC assessed. The court specifically notes that Dr. Vopat included a restriction from overhead work and from rapid repetitive motions of the hands and wrists. (R. 241). The court has already found that substantial evidence supports the ALJ's determination with regard to plaintiff's allegations and with regard to Dr. Taylor-Butler's opinion.

Additional evidence to which the ALJ accorded significant weight and which supports the RFC assessment was the opinion of Dr. Bean that plaintiff could develop and maintain work relationships, and could understand and perform basic and simple tasks, and that it is by no means clear that plaintiff had abstained from drug abuse for eight months. (R. 31, 35, 204). The ALJ also accorded significant weight to Dr. Fortune's opinion that plaintiff would have no problems with coins, doorknobs,

-23-

buttons, hearing, or speaking, although he would have problems
with above-shoulder activities.  (R. 36, 237).  The court finds
substantial evidence in the record as a whole supports the ALJ's
RFC assessment.  Therefore, the ALJ's hypothetical question which
was based upon her RFC assessment was also supported by
substantial evidence in the record.

**VIII.    Whether Substantial Evidence Supports the
           Representative Jobs Upon Which the ALJ Relied**

Plaintiff asserts that the representative jobs identified by
the vocational expert require repetitive use of the upper
extremities which are beyond plaintiff's capabilities.  (Pl. Br.
11).  The Commissioner acknowledges that the representative jobs
identified require repetitive tasks, but she argues that the jobs
do not require "rapid repetitive motions" of the wrists and
hands, and are, therefore, within the RFC assessed for plaintiff.
(Comm'r Br. 12).  The court agrees with the Commissioner.

The ALJ included a prohibition of "rapid repetitive motions
with hands and wrists" in her hypothetical to the vocational
expert.  (R. 448).  The expert testified that even with that
restriction, the representative jobs would be available to
someone with the RFC assessed.  (R. 448-50).  While the
representative jobs require the performance of <u>repetitive tasks</u>
as plaintiff alleges and the Commissioner agrees, plaintiff has
not shown that they require the performance of <u>rapid repetitive</u>

<u>motions</u> of the wrists and hands.  Therefore, plaintiff has not shown that the representative jobs are beyond his capabilities. The court finds the vocational expert's testimony is substantial evidence supporting the ALJ's determination that the representative jobs do not require rapid repetitive motion of the wrists and hands, and are within plaintiff's capabilities.

**IX.  Whether Substantial Evidence Supports Finding Plaintiff Has Abused Drugs During the Time Relevant to the Applications at Issue**

Plaintiff claims he "had one episode of cocaine abuse in his past and had struggled with alcohol.  However, those issues were resolved by or around the date of application for Social Security disability benefits (and by date of onset of disability), and Plaintiff testified unequivocally that he does not presently abuse illegal drugs or alcohol." (Pl. Br. 12).  The Commissioner did not respond to this allegation.

Plaintiff protectively filed the applications at issue here on August 30, 2004, and alleges an onset of disability on February 7, 2003.  (R. 80-85, 384-86).  Thus, his claim is that the issues regarding alcohol and drug abuse were resolved before the onset of disability, and he has not abused drugs or alcohol since February 7, 2003.

To the extent plaintiff's argument relies upon his testimony, that reliance is precluded by the court finding that substantial evidence supports the ALJ's determination that

-25-

plaintiff's allegations are not credible.  Moreover, plaintiff's
assertion in his brief is directly contradicted by the ALJ's
findings and the record evidence.  The ALJ's summary of the
medical evidence is arranged in chronological order.  (R. 27-35).
In the following discussion, the court will address each
reference in which the ALJ made a finding contrary to plaintiff's
assertions regarding current alcohol or drug abuse, and will
include a citation to the finding in the decision and to the
place in the administrative record supporting the finding.

The ALJ noted that plaintiff presented to the VA's intensive
substance abuse treatment (ISAT) program in July 2003; that
plaintiff reported he continued to smoke crack cocaine daily and
spent $200 -$300 per week, he was drinking heavily, and regularly
using marijuana; and that a urine drug screen was positive for
cocaine.  (R. 27).  Medical records from this period support the
ALJ's findings.  (R. 339)("29yr hx of crack abuse," "uses about
200-300$/week of crack," "UDS is strongly + for cocaine," 27 year
history of marijuana abuse, last used 1 week ago, drinks on
weekends and holidays, "usually drinks 1/2pint of gen [sic] with
few beers," "last drink was last night"); (R. 341)("UDS is +ve
for cocaine and marijuana); (R. 342)("reporting cocaine and
marijuana" "last use 1 week ago" "seeking intervention for
etoh/crack cocaine dependency hx and current use").  The ALJ
noted that plaintiff admitted to Dr. Taylor-Butler on November

-26-

11, 2004 that he continued to smoke marijuana and drink beer on weekends.  (R. 30); <u>see</u> (R. 199)("Alcohol:  Beer weekends Illicit Drugs:  Marijuana").  As the ALJ stated, Dr. Bean "opined the validity of claimant's contention of 8-months of abstinence from illicit drug and alcohol abuse 'is by no means clear at this time.'" (R. 31)quoting (R. 204).

The ALJ stated that plaintiff called the VA on November 10, 2004 stating that he had been taking his mother's Valium.  (R. 31); <u>see</u> (R. 286)("gabapentin is not helping," "when he takes one of his mothers pills it calms his nerves," "Asks if he can have Valium instead of gabapentin.").  The ALJ noted that plaintiff called Dr. Moscovich and again requested Valium.  (R. 31); <u>see</u> (R. 280-81)("pt wants to have valium, he has been taking his mother's sometimes," "recommended not to take any valium").  The ALJ noted plaintiff's report to Dr. Taylor-Butler in late January 2005[5] that he continued to drink alcohol occasionally.  (R. 32); <u>see</u> (R. 263)("SOCIAL HISTORY: . . . He drinks alcohol occasionally.").  The ALJ noted that plaintiff told Dr. Moscovich in Febuary 2005, that he sometimes took his prescribed medication but mostly he took his mother's Valium.  (R. 32); <u>see</u> (R. 279)("pt has been taking his mother's valium which he was told

---

[5]The ALJ stated that this occurred in late July 2005 (R. 32), but the records alluded to show that it was actually in late January.  (R. 263).

not to do as it is highly sedated medication and cause strong

dependency" "he sometimes takes his depression medication but he

takes valium very likely most of the time."). Finally, the ALJ

noted that plaintiff admitted to a nurse practitioner at the VA

in September, 2006 that he continued to drink five to six drinks

of alcohol on a weekly basis. (R. 34-35); see (R. 266)("ETOH 1

pt gin/month or 6 pk beer/month").

The court's review of the decision and the record evidence

as discussed above reveals substantial evidence in the record to

support the ALJ's determination that plaintiff has abused alcohol

and drugs during the period relevant to the applications at

issue. Therefore, that fact was properly relied upon by the ALJ

in noting that plaintiff's contrary allegation was not credible

and in supporting the finding of incredibility.

**X.   Whether Substantial Evidence Supports the ALJ's Reliance
      Upon Sporadic Medical Treatment in Finding Plaintiff's
      Allegations Incredible**

Plaintiff claims that the "Paucity of medical records in the

file is the result of Plaintiff's poverty and lack of medical

insurance. He simply is unable to consult and be

examined/treated by health care providers as much as is necessary

due to financial constraints." (Pl. Br. 12). The Commissioner

argues that plaintiff's minimal treatment is inconsistent with

plaintiff's allegations of disabling limitations. (Comm'r Br.

7). He points to the ALJ's questioning of plaintiff in this

-28-

regard at the hearing and argues that the ALJ properly relied upon this minimal and sporadic treatment to discount plaintiff's allegations. (Comm'r Br. 7-8).

At the hearing, plaintiff testified that he had no medical insurance and no income to pay for medical care, and that this fact made it difficult for him to get medications and medical treatment. (R. 430-31). On follow-up questioning by the ALJ, plaintiff agreed that his care from the VA was free, and that the treatment he paid for at Quindaro Swope Health was available for free at the VA. (R. 431-32). He testified that he has no transportation, and sometimes he has no money to get to the VA, but, when pressed, admitted that he had not checked into city services that provide rides for persons otherwise unable to get to medical care. (R. 432). The ALJ discussed this situation in the decision:

> [Plaintiff] testified he has no medical insurance, that he has no income to pay for medical treatment, and that his prior application for Medicaid benefits was denied, and he alleged such served as barriers to his ability to obtain treatment and medications; however, he admitted he is able to receive free medical care at the VA Medical Center, but he contended he had no income to pay for transportation to that facility to seek medical attention, inconsistent with his demonstrated ability to utilize public bus service to attend the hearing. He also admitted he had not contacted local social service agencies that are known to provide indigent or impoverished individuals with transportation to medical facilities.

(R. 22-23).

The ALJ noted that plaintiff was fired from his last job in February 2003, the month of his alleged onset, and that there is no evidence of medical treatment near that date. (R. 27). He noted that in July 2003, five months after his alleged onset date, plaintiff went to the VA intensive substance abuse treatment (ISAT) program for drug abuse treatment, but went AWOL from that program four days later. (R. 27-28). The ALJ noted that the next time plaintiff sought medical treatment was August 2, 2004, sixteen months after the alleged onset date (and almost thirteen months after leaving the VA drug abuse program). (R. 28). The ALJ then noted:

> The sheer paucity of medical treatment during this
> extended timeframe is not supportive of claimant's
> allegation of constant and disabling level "9" pain,
> particularly considering his ability to obtain free
> medical care through the VA Medical Center. Although
> he alleged financial constraints to obtain
> transportation to that facility, the record reveals he
> utilized financial resources available to him towards
> purchases of crack cocaine, marijuana, and alcohol,
> which would have been readily applied towards the
> relatively low cost of bus fare to a medical facility
> to help treat pain and other extreme disabling symptoms
> alleged.

Id.

Later, when presenting her credibility analysis, the ALJ stated:

> [Plaintiff] alleged he sees Dr. Moscovich, Dr. [Taylor-
> ]Butler, and nurse practitioner Steen on a monthly
> basis; however, the medical records refute that
> allegation and reflect multiple periods of several

-30-

> months to over 1-year duration wherein he did not seek
> any medical treatment.
>
>                               * * *
>
> He alleged financial constraints in obtaining medical
> treatment, but the records reveal he utilized financial
> resources available to him towards recurrent purchases
> of cigarettes and alcohol and previously crack cocaine
> and marijuana.

(R. 37).

The ALJ made clear that she was relying upon sporadic medical treatment as one indication that plaintiff's allegations of disabling symptoms are not credible.  The ALJ explained her rationale in that regard and supported that rationale with record evidence.  The court's review of the record reveals that the facts as stated by the ALJ are borne out in the record evidence. Substantial evidence in the record supports the ALJ's finding.

Plaintiff failed to cite any legal authority supporting her claim that the final decision is not supported by substantial evidence, and thereby waived any argument that the Commissioner applied the incorrect legal standard.  Further, plaintiff made no specific allegation regarding how the record evidence cannot support the final decision.  Nonetheless, the court recognized several implied arguments, and reviewed the final decision to determine whether substantial evidence supports that decision. As discussed above, the court finds that substantial evidence in the record as a whole supports the final decision in this case.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this _____ day of April 2009, at Wichita, Kansas.


     <u>s:/Donald W. Bostwick</u>
     **DONALD W. BOSTWICK**
     **United States Magistrate Judge**